HILL & COMPANY v. PITZELE GIN CO.

5-3792                                        399 S. W. 2d 667

Opinion delivered March 7, 1966

*Dudley & Burris,* for appellant.

*Ponder & Lingo,* for appellee.

ED. F. MCFADDIN, Justice. Appellant, James C. Hill & Company, Inc., filed action against the appellee, Pitzele Gin Company, for $1,650.00, claimed to be due under a written contract. The appellee denied liability. Trial to the Circuit Court without a jury resulted in

judgment for the appellee, and the appellant prosecutes this appeal.[1]

The background facts will be recited in some detail. Appellant, James C. Hill & Company, Inc. (hereinafter called "Hill"), is a cotton buyer, with its main offices in Memphis, Tennessee, and a local representative in Lawrence County. The appellee, Pitzele Gin Company (hereinafter called "Pitzele"), is a partnership, engaged in operating a cotton gin in Lawrence County. On August 23, 1963 appellant and appellee entered into a contract whereby appellee would purchase from the producers (farmers) all the cotton that it could that was ginned at the Pitzele gin in the season of 1963, and the appellee would sell such purchased cotton to appellant. The contract was prepared by appellant at its office in Memphis and sent to its local representative in Lawrence County and there signed by appellee. We copy the contract in full:

"JAMES C. HILL & COMPANY
Incorporated
COTTON
P. O. Box 599
Memphis, Tennessee

"No. 2302        August 23, 1963
"Pitzele Gin Co.
Walnut Ridge, Arkansas

"We beg to confirm the following purchase:
"Quantity     Approximately 1,500 (fifteen hundred) bales.

---

[1] On this appeal appellant urges three points, being:
"I. The Court erred in its finding of fact and conclusion of law that the rebate paid by Federal Compress & Warehouse Company was not a payment for concentrating cotton into the compress.
"II. The Court should have awarded Judgment to the plaintiff as a matter of law.
"III. The Court erred in its finding that James C. Hill & Company, Inc., was not entitled to the refund because it was not a potential customer with whom Federal Compress & Warehouse Company would attempt to create good will."

"Description    All cotton ginned and bought during the 1963/1964 season. Cotton to be stored at the Federal Compress & Whse. Co., Walnut Ridge, Arkansas. U. S. Government Green Card Class.

"Price    10 points over the Government loan. *Buyers to receive any rebate paid by the Federal Compress & Whse. Co. for concentrating the cotton into the compress.* [Italics our own.]

"Terms    FOB compress, Walnut Ridge, Arkansas. Receiving and storage charges to be deducted by the seller.

"Reimbursement    S/D with invoice and warehouse receipts attached on James C. Hill & Co., Inc., c/o The First National Bank, Memphis, Tennessee. Seller to furnish U. S. Government Green Cards with each draft.

"Remarks    All cotton classed grassy will be invoiced at 100 points under the grade to which it has been reduced. Price adjusted accordingly. No below grades acceptable. In the event the Government comes out with a domestic subsidy paid to the farmer and buyer or seller cannot be protected, it is agreed by seller to put cotton in loan and buyer to pay 10 points to seller.

"No liability shall result to us from our delay or

failure to deliver commodities sold or to accept commodities bought when such delivery or acceptance is delayed or prevented by riots, strikes, floods, fire, storm, earthquake, tornado, act of God, delays of carriers, embargoes, or other causes beyond our control.

"If this contract is incorrect kindly advise immediately by wire. We thank you for the order.

"Yours very truly,

JAMES C. HILL & CO., Inc.
James C. Hill."

"Accepted: Pitzele Gin Company
by W. E. Spikes
"September 3, 1963

Under this contract, Pitzele bought for the account of Hill 1,650 bales of cotton. After the cotton had been ginned and baled, Pitzele would contract to buy the cotton from the producer (farmer). The bale would then be taken to the Federal Compress & Warehouse in Walnut Ridge, where a compress receipt would be issued. Pitzele would then pay the producer (farmer) the price for which Pitzele had purchased the cotton, and Pitzele would then attach the said compress receipt to a sight draft drawn on Hill. Of course, until Hill received the compress receipt, it did not obtain title.

Is some previous years, the compress receipts had been issued in the name of the individual producer (farmer); but for the 1963 season the compress issued all such compress receipts in the name of Pitzele; and that fact contributed to the present litigation. The compress in Walnut Ridge is one owned and operated by the Federal Compress & Warehouse Company (hereinafter called "Compress"); and shortly before May 15, 1964 the compress, in accordance with its custom of a previous year, decided to make a refund of $1.00 per

bale on all cotton that had been delivered to it in the 1963 season. This refund[2] was under Rule 19.

The compress offered Pitzele a check for $1,650.00 for such refund, but Pitzele refused to receive the check, advising the representative of the compress that the refund belonged to the individual producers (farmers) and should be distributed to them, just as had been done in previous years. The compress agreed with Pitzele, and while it was in the process of getting the names of the individual producers and the number of bales of each producer, Hill filed this present action against the compress and Pitzele for the $1,650.00. The compress paid the money into the registry of the Court and was discharged. Pitzele made a refund of $1.00 per bale to each producer (farmer) whose cotton it had bought and this totalled $1,650.00; and then Pitzele claimed the $1,650.00 in the registry of the Court.

The basis of Hill's claim for the $1,650.00 was the previously italicized wording in the contract between Hill and Pitzele, which said: "Buyers to receive any rebate paid by the Federal Compress & Whse. Co. for concentrating the cotton into the compress." Pitzele took the position that the $1.00 per bale refund was not a rebate for concentrating the cotton into the compress, but was a refund that the compress was paying to obtain the good will of the farmers and that Pitzele had likewise passed the refund on to the farmers in order to have their continued good will to get cotton ginned at Pitzele's gin.

---

[2]The compress company had issued an 8-page folder containing the schedule of charges and rules for its various compresses and warehouses. One of the rules was Rule 19, which reads in full:

"19.   The company will make a refund as of the close of the fiscal year to each patron who deposits flat cotton with the company for storage and compression. The name on the warehouse receipt shall determine who shall receive any refund made hereunder, and no bale of flat cotton shall be the subject of more than one refund. The decision of the board of directors will be based on net earnings and the competitive situation and shall be final as to the amount and time of such refund."

With the issues thus joined, the Circuit Judge heard the evidence *ore tenus* and decided in favor of Pitzele. The Judge delivered written findings of fact and conclusions of law; and we copy pertinent excerpts:

"At the time of delivery to Federal Compress & Warehouse Company the cotton was still owned by the individual producer although it was later bought from the producer by Pitzele Gin Company and then title transferred to James C. Hill & Company. For convenience, and to simplify bookkeeping, warehouse receipts were issued to Pitzele Gin Company rather than in the name of each individual producer . . . .

"Since the contract was prepared by James C. Hill & Company it must be construed in the light which is most favorable to Pitzele Gin Company.

"The refund of $1,650.00 from Federal Compress & Warehouse Company was a voluntary gift to promote its business. It is obvious the Federal Compress & Warehouse intended to place itself in a position so that it could meet competition, and promote good will among its customers which would be the producers and ginners of the area around Walnut Ridge, Arkansas. . . .

"Since the money was not a payment for the concentrating of cotton it would not be due to James C. Hill & Company under its contract with Pitzele Gin Company.

"Pitzele Gin Company having prepaid the individual producers, is now entitled to the deposit in the registry of the Court and should be paid same. . . ."

With the litigation stated in detail, we come to our own conclusions. We emphasize that Hill prepared the contract with Pitzele, so in considering any doubtful meaning, the contract is to be construed most strongly against Hill. *Gulf Compress Co.* v. *Harrington*, 90 Ark.

256, 119 S. W. 249; *Taylor* v. *Union Saw Mill Co.,* 105 Ark. 518, 152 S. W. 150; *Ark. P. & L. Co.* v. *Murry,* 231 Ark. 559, 331 S. W. 2d 98; and *Shuffield* v. *Harton,* 234 Ark. 455, 352 S. W. 2d 574.

The burden was on Hill to prove that the $1.00 per bale refund by the compress was ''a rebate paid . . . for concentrating the cotton.'' The compress' rule called the amount a ''refund.'' While the dictionaries may make no appreciable distinction between ''refund'' and ''rebate,'' yet the testimony in this case shows the difference. The refund of $1.00 per bale went to the farmer who produced one bale, as well as to the large plantation owner who produced many bales. It was a uniform refund to all alike and not on the basis of ''concentrating.'' That word, ''concentrate,'' means ''to bring to a center.'' If cotton had been at several points and in other warehouses and had been brought to Walnut Ridge, then the amounts paid for such bringing could have been ''rebates for concentration.'' But, here, every depositor of cotton for storage was treated equally. The $1.00 per bale was a refund to gain future business, and not a rebate for previous labors.

After hearing all the evidence as to customs and refunds in a previous year, the Trial Court reached the conclusion that the $1.00 per bale was not a ''rebate for concentration''; and we agree.

Affirmed.